**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Akintayo Akinyele | : | 3:21-CV-184 (OAW) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| Robert A. Picelli, Jr. | : | |
| Zeldes, Needle & Cooper, PC aka ZNC | : | |
| Law | : | |
| *Defendants*. | : | JUNE 9, 2023 |

**RULING AND ORDER ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

When someone purchases a condominium, they join an association responsible for the upkeep and maintenance of all common areas within the community. To maintain the development, the condominium association assesses and collects fees from each unit owner. Under Connecticut state law, when an owner fails to pay their condo fees, the association may foreclose on the unit. Plaintiff Akintayo Akinyele ("Plaintiff") is the owner of a condominium unit governed by the Huntington Condominium Association ("Association") in Bridgeport, Connecticut. In 2017, the Association retained the law firm of Zeldes, Needle & Cooper P.C. ("ZNC") to collect Plaintiff's unpaid condo fees. Plaintiff brings federal and state law claims against ZNC and its attorney, Robert A. Pacelli, Jr. ("Attorney Pacelli") (with ZNC, "Defendants") for their actions in attempting to collect the fees on behalf of the Association.[1] The five-count complaint asserts violations of the Fair

---

[1] Although Plaintiff contests the existence of any debt owed to the Association, he brings this action only against the Association's attorneys: ZNC and Attorney Pacelli.

Debt Collection Practices Act ("FDCPA"), negligent infliction of emotional distress, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").[2]

Defendants have moved for summary judgment as to all counts of the complaint. Defs.' Mot. Summ. J. 1–2, ECF No. 10.  Plaintiff concedes that summary judgment should be granted with respect to the complaint's federal claims under the FDCPA.  Pl.'s Objection, ECF No. 23.  Plaintiff objects, however, to summary judgment as to the state law claims.  Rather than filing any arguments in response to Defendants' motion for summary judgment, Plaintiff has filed a motion to dismiss the claims stating that he "intends to prosecute his claims in State Court."[3]  Mot. to Dismiss 1, ECF No. 24.  For the reasons stated herein, Defendants' motion for summary judgment hereby is **GRANTED** in part and **DENIED** in part.  Plaintiff's motions to dismiss hereby are **GRANTED.**  The Clerk of Court is directed to render judgment for Defendants on Counts One and Two and to terminate this action from the court's docket, please.

## I.    BACKGROUND

The following facts are taken from Defendants' Local Rule 56(a) Statement of Undisputed Facts.  *See* Defs.' L.R. 56(a)1 Stmt., ECF No. 19-1 at 1–2 [hereinafter "Defs'.

---

[2] Counts Three and Four are each entitled "Negligent Infliction of Intentional Infliction of Emotional Distress." Compl. at 7–8, ECF No. 1.  A plaintiff seeking to recover for emotional distress may do so through the common law torts of negligent infliction of emotional distress or intentional infliction of emotional distress. No cause of action exists for the "Negligent Infliction of Intentional Infliction of Emotional Distress." Therefore, the court presumes that Counts Three and Four contain a typographical error and that Plaintiff meant to assert a cause of action for negligent infliction of emotional distress.  Neither count actually alleges intentional conduct; they assert that "[t]he defendant knew or should have known that her/its actions would cause the Plaintiff to become angry, distress and incur more attorney's fees."  *Id.* p. 7 ¶ 34, p. 8 ¶ 34.

[3] In response to Defendants' summary judgment motion, Plaintiff filed a "motion for leave to dismiss state claims before granting summary judgment" (ECF No. 22) and, on the same day, filed a "revised motion" for leave (ECF No. 24). In light of the revised motion, the court denies the original motion at ECF No. 22 as moot and will refer to the revised motion at ECF No. 24 as Plaintiff's relevant motion to dismiss.

Stmt."].[4]  Plaintiff has failed to submit his own statement of facts in opposition to the summary judgment motion, as required by the Local Rules.[5]  Thus, the court is permitted to deem admitted any facts presented by Defendants that are supported by the record. *See* D. Conn. L. Civ. R. 56(a)3.  All ambiguities in the record are construed in Plaintiff's favor.  All facts are undisputed, unless indicated otherwise:

In 2006, Plaintiff purchased a condominium unit located at 120 Huntington Turnpike, Unit 902, Bridgeport, Connecticut (the "Property").  Defs'. Stmt. ¶ 1, ECF No. 19-1 at 1–2.  The Property is located within a condominium community governed by the Association.  *Id.*  Plaintiff has never resided at the Property.  *Id.* ¶ 2.  Plaintiff rents the Property to tenants for the purposes of earning rental income.  Pl.'s Dep. 13:7–17, ECF No. 19-1 at 13.  According to Plaintiff, the Property has "always been a rental property." *Id.* at 13:2.

In his complaint, Plaintiff alleges that he pays his "condo fees religiously."  Compl. ¶ 5, ECF No. 1.  On June 15, 2017, however, Plaintiff received a letter from Attorney Pacelli at ZNC informing Plaintiff that he had failed to pay the Association's fees between October 31, 2016, and June 10, 2017.  Defs'. Stmt. ¶ 4, ECF No. 19-1 at 1.  Attorney Pacelli's letter indicated that Plaintiff owed a balance of $3,672.82.  Ex. 2, ECF No. 19-1 at 27.  Plaintiff contested the allegation of nonpayment.  *See* Ex. 3, ECF No. 19-1 at 30. In a letter dated July 9, 2017, Plaintiff informed the Association and ZNC that a review of

---

[4] In referencing the document filed at ECF No. 19-1, which contains a collection of various documents, the court refers to the pagination provided in the headers supplied by the ECF system.

[5] Local Rule 56(a)2(i) states as follows: "A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)."

his bank records showed that payments were, in fact, made to the Association during the period of time noted in Attorney Pacelli's letter. *Id.* Plaintiff attached to the letter his bank statement for the relevant time period. *Id.* at 31. Plaintiff also advised the Association to review their records and to determine the clerical or processing issue that erroneously would have reflected a balance on Plaintiff's account. *Id.* at 30.

More than eight months later, the seemingly trivial clerical issue had not been resolved. On March 26, 2018, Attorney Pacelli sent another letter to Plaintiff informing him that he now owes a balance of $8,190.42.[6] Ex. 4, ECF No. 19-1 at 33. ZNC's March 26 letter also informed Plaintiff that the Association has no record of the payments set forth on the bank statement previously provided by Plaintiff. *Id.* at 34. At this point, Plaintiff called his bank. Pl.'s Dep. at 28:17–29:1, ECF No. 19-1 at 14–15. The bank informed Plaintiff that checks had been sent from Plaintiff's account, but they had not yet been cashed. *Id.* at 29:1–3. It was then that Plaintiff realized that the bank had an incorrect address for the Association. *Id.* at 29:3–7. Plaintiff remembered that the Association had changed management companies, and that the bank still must have had the address of the old management company. *Id.* Plaintiff contends that the Association had received, and likely cashed, at least some of his checks sent to the previous management company because the Association switched companies prior to 2014, but the nonpayment issue did not arise until November 2016. *See id.* at 30:6–16. Regardless, Plaintiff updated the address with his bank. *Id.* at 29:8.

---

[6] The March 26 letter to Plaintiff states a reference to "Nob Hill Condominium," which the court presumes is a typographical error as Plaintiff's condominium association is "Huntington Condominium Association."

After consulting with his bank, Plaintiff responded with his own letter on March 29, 2018.  Ex. 5, ECF No. 19-1 at 37.  In the March 29 letter, Plaintiff again contests the allegation of nonpayment.  *Id.*  Plaintiff states that he has been paying his monthly charges to the Association throughout the disputed period, and attaches to the letter a bank statement showing all the payments made to the Association via a check made out to "HUNTINGTON CONDOS BRIDGEPORT."[7]  *Id.*  Plaintiff notes, however, that the bank has informed him that while checks were issued from his account at the beginning of every month, these checks have yet to be cashed.  Plaintiff then states that he has canceled the checks and requests an address to which he may send the payment.  *Id.* at 38.  Plaintiff followed up with the Association and ZNC in a letter dated May 11, 2018, because he had yet to receive the information requested in his March 29 letter, including the address to which payment may be made.  Ex. 6, ECF No. 19-1 at 41.  Plaintiff then enclosed a check for $427.35 for the common charges for May 2018.  *Id.*  That check, however, was returned to Plaintiff by ZNC.  Ex. 8, ECF No. 19-1 at 47.  Plaintiff's check was made payable to "Huntington Condominium Association," but, as ZNC previously informed Plaintiff through its March 26 letter, "all payments are to be made payable to our firm as trustee and be by bank check or money order only."  *Id.*; *see also* Ex. 4, ECF No. 19-1 at 34.

On June 1, 2018, Plaintiff sent a letter to the Association and ZNC informing them that he had received a civil summons for the foreclosure of his unit.  Ex. 7, ECF No. 19-1 at 44.  Plaintiff again requested a ledger of his account.  *Id.*  On July 16, 2018, Attorney Pacelli sent a letter to Plaintiff providing a summary of the balance due to the Association

---

[7] Defendants have not provided the court with any of the attachments indicated in Plaintiffs' letters.

"to settle this matter"  Ex. 9, ECF No. 19-1 at 49.  The Association now demanded $12,178.74, which includes the monthly fees owed to the Association as well as court fees for the foreclosure action.  *Id.*  Plaintiff responded in a letter dated July 30, 2018, re-affirming that he does not owe the Association any payments and has made payments for every month in the disputed period.  Ex. 10, ECF No. 19-1 at 54–55.  On August 20, 2018, Plaintiff sent the Association a check for $8,684.91.  Ex. 11, ECF No. 19-1 at 57. That check, like the check sent with Plaintiff's March 29 letter, was returned to Plaintiff by ZNC because it was made payable to the wrong entity and because it was not a certified bank check or money order.  Ex. 12, ECF No. 19-1 at 62.

On November 11, 2020, Plaintiff received another notice of delinquency from ZNC stating that Plaintiff now owed $23,265.12. Compl. ¶ 13, ECF No. 1.  Plaintiff sent the full amount pursuant to the notice.  *Id.* ¶ 14.  ZNC, however, returned the check.  *Id.* ¶ 16. Plaintiff alleges that ZNC's letters constitute "a false representation and deceptive means to collect or attempt to collect an unlawful debt which lawful part was paid in full."  *Id.* ¶ 17–18.  Moreover, Plaintiff states that the collection attempts were not "expressly authorized by the agreement (bylaws et al between the plaintiff and the Condominium Association)."  *Id.* ¶ 21.  Plaintiff's complaint asserts a violation of the FDCPA, negligent infliction of emotional distress, and a violation of CUTPA.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden

of establishing that no genuine issue of material fact exists." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* The court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986)). Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At summary judgment, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact best left for determination by a jury at trial. *Anderson*, 477 U.S. at 249.

## III.   DISCUSSION

Defendants move for summary judgment as to each count of the complaint. *See* Defs.' Mem. of Law, ECF No. 19-2. They argue that Plaintiff's debt is not a "consumer debt" under the FDCPA, which applies only to debts from transactions "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). At his deposition, Plaintiff admitted that he has never personally resided at the Property, and that he has always rented it out to others as an "income-yielding" "investment property." Defs.' Stmt ¶ 3, ECF No. 19-1 at 1; Pl.'s Dep. 13:4–17, ECF No. 19-1 at 13. Thus, Plaintiff concedes that he cannot in good faith object to this argument. Pl.'s Obj., ECF No. 23. Accordingly, Defendants' motion for summary judgment is **GRANTED** as to the FDCPA claims in Counts One and Two.[8]

Next, Defendants move for summary judgment as to the remaining state law claims for negligent infliction of emotional distress and CUTPA. Defendants argue that Connecticut law shields attorneys from claims arising from their representation of a client. Plaintiff has not responded to this immunity argument and instead seeks leave to dismiss his state law claims so that he may "prosecute his claims in State Court." Pl.'s Mot. for Leave ¶ 3, ECF No. 22. Plaintiff appears to concede the lack of subject matter jurisdiction

---

[8] Because the FDCPA is inapplicable, the court need not address Defendants' alternative argument that such claims are time barred by the statute of limitations. *See* Defs.' Mem. of Law 8–9, ECF No. 19-2.

over the state law claims, but he maintains that "such claims should be dismissed but not failed as a matter of law in a Summary Judgment" motion. *Id.* ¶ 2–3.

In Connecticut, absolute immunity shields attorneys from suits stemming from their "conduct while representing or advocating for a client during a judicial proceeding that was brought for a proper purpose."[9]  *See Simms v. Seaman*, 308 Conn. 523, 546 (2013). It originally developed in the context of defamation suits, but the Supreme Court of Connecticut has expanded its scope "to bar retaliatory civil actions beyond defamation claims." *Scholz v. Epstein,* 198 Conn. App. 197, 208 (2020), *aff'd*, 341 Conn. 1, 266 A.3d 127 (2021); *see also Petyan* v. *Ellis*, 200 Conn. 243, 255 (1986) (barring claim for intentional infliction of emotional distress).  Thus, where an attorney is sued for alleged misconduct in their role as an advocate, "the law protects [them] from suit in order to encourage zealous advocacy on behalf of their clients, unrestrained by the fear of exposure to tort liability." *Perugini v. Giuliano*, 148 Conn. App. 861, 873 (2014).

"Connecticut appellate courts consistently have held that claims of negligent infliction of emotional distress premised on communications made during and relevant to an underlying judicial proceeding are afforded absolute immunity."  *Dorfman v. Smith*, 342 Conn. 582, 612–13 (2022) (footnote omitted) (citing cases).  Likewise, "[c]ourts in Connecticut consistently have applied the litigation privilege to CUTPA claims based on communications made during and relevant to a prior judicial proceeding." *Deutsche Bank AG v. Vik*, 214 Conn. App. 487, 507 (2022) (concluding that plaintiff's CUTPA claim is barred by the privilege).

---

[9] In Connecticut, absolute immunity is used interchangeably with "litigation privilege."  *Simms v. Seaman*, 308 Conn. 523, 526 n.1 (2013) (noting that "[t]he terms 'absolute immunity' and 'litigation privilege; are used interchangeably throughout this opinion")

Here, Defendants were retained to collect Plaintiff's allegedly past-due condo fees. All of Plaintiff's allegations regarding Defendants' conduct—the debt collection letters allegedly containing incorrect delinquency amounts, the returned payoff checks, and the attempts to collect debts allegedly paid in full—arose out of that legal representation. Defendants acted exclusively in their professional capacities and in connection with a judicial proceeding: the foreclosure of Plaintiff's Property.  The court has no reason to deviate from well-established Connecticut law protecting such conduct as absolutely immune from suit, particularly where Plaintiff has not alleged that Defendants initiated action for any improper purpose.  *See MacDermid, Inc. v. Leonetti,* 310 Conn. 616, 629 (2013).  Accordingly, the court finds that Defendants are immune from Plaintiff's state law claims for negligent infliction of emotional distress and for violation of CUTPA.

Defendants argue that summary judgment should be granted where they have absolute immunity, as it implicates the court's subject matter jurisdiction; Plaintiff argues those counts should be dismissed without prejudice.  The court cannot reach the merits (via summary judgment or after trial) on any claim lacking subject matter jurisdiction. *See* 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2713.  "If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action."  *Id.* Connecticut courts repeatedly have stated that "the doctrine of absolute immunity concerns a court's subject matter jurisdiction."  *Tyler v. Tatoian*, 164 Conn. App. 82, 87 (2016).  Thus, where Defendants are absolutely immune from Plaintiff's state law claims, the respective counts of the complaint must be dismissed for lack of jurisdiction, rather than disposed of by summary judgment.  Moreover, Second Circuit precedent instructs that "when a court dismisses for lack of subject-matter jurisdiction, that dismissal must

be without prejudice." *Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) (summary order) (citing cases).[10]   Accordingly, Counts Three, Four, and Five of the complaint hereby are **DISMISSED** without prejudice.

## IV.     CONCLUSION

Defendants' motion for summary judgment (ECF No. 19) hereby is granted in part and is denied in part.  Summary judgment hereby is granted with respect to Counts One and Two, and is denied as to Counts Three, Four, and Five.  Plaintiff's motion to dismiss (ECF No. 24) the state law claims in Counts Three, Four, and Five hereby is **GRANTED**. The Clerk of Court is directed to render judgment for Defendants on Counts One and Two and to terminate this action from the court's docket, please.

**IT IS SO ORDERED.**  Entered at Hartford, Connecticut, this 9th day of June, 2023.

_____
       */s/*
OMAR A. WILLIAMS
United States District Judge

---

[10] Interplay between state and federal law on this subject allows a plaintiff unsuccessful in federal court to bring their claims in state court to attempt renewed review. However, collateral estoppel bars plaintiffs from relitigating claims already determined by the court under principles of absolute immunity.